Stephani L. Ayers (Washington State Bar #31610)
Law Office of S.L. Ayers
P.O. Box 1061
Medford, Oregon 97501
Tel: (813) 382-7865
Fax: 1 (888) 866-4720
Email: stephani@whistleblowerdefenders.com

Nikolas F. Peterson, Esq.
Hanford Challenge
2719 East Madison Street, Suite 304
Seattle, WA 98112
Tel: (206) 292-2850 ext. 25
Email: nikolasp@hanfordchallenge.org

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

**WALTER E. FORD,**

        Plaintiff,

**v.**                                           Case No. 18-cv-05101

                                             **COMPLAINT**

**AECOM and
BECHTEL NATIONAL, INC.,**                    **JURY TRIAL DEMANDED**

        Defendant.

_____

    Plaintiff, through his counsel, alleges as follows:

COMPLAINT-                        1                        Stephani Ayers
                                                          PO Box 1061
                                                          Medford, OR 97501

# I.    NATURE OF THIS ACTION

1.    Plaintiff Walter E. Ford hereby brings this action based upon retaliation against him by his employers in violation of the Energy Reorganization Act, 42 U.S.C. § 5851, as amended.

## II.  PARTIES

1.  Plaintiff Walter E. Ford is a United States citizen residing in the State of Washington.  Plaintiff was an employee at the Hanford Waste Treatment and Immobilization Plant (WTP).  Defendants Bechtel National, Inc., and AECOM (formerly URS, Inc. d/b/a URS Energy and Construction, Inc.) employed Plaintiff.  Plaintiff was at the WTP project at the Hanford Site until his termination on November 17, 2011.

2. Bechtel National, Inc. (BNI) is a government contractor hired to design, build and commission the Hanford Waste Treatment and Immobilization Plant, which is intended to stabilize the radioactive and chemical wastes stored in underground tanks at the Hanford Nuclear Site.

3.  AECOM acquired URS, Inc. ("URS") d/b/a URS Energy and Construction, Inc.) in 2014.  URS, Inc. was a partner and Principal Subcontractor to Bechtel National, Inc. ("BNI") in a government contract to design, build and

COMPLAINT-                                    2                          Stephani Ayers
                                                                         PO Box 1061
                                                                         Medford, OR 97501

commission the Hanford Waste Treatment and Immobilization Plant.  URS (now AECOM) functioned as a partner in profit-splitting with BNI and staffed key positions. URS (now AECOM) earnings were a direct result of contract milestone performance with BNI as judged by DOE rather than a typical subcontractor payment schedule.  The milestone performance includes both distinct milestones as well as subjective judgments by the DOE in areas such as responsiveness and percentage of work completed.

4.  At all times relevant to this complaint, BNI and URS (now AECOM) acted as joint employers to Plaintiff Ford.  Among other employer type tasks, BNI paid Plaintiff, while BNI and URS (now AECOM) supervisors directed Plaintiff's work.  Defendant URS shared responsibility with Defendant Bechtel National for operating the Waste Treatment Plant and Materials Handling Facility as well as supervising the employees who worked there.  Both Defendants participated in the retaliatory scoring, rating, and ranking system that resulted in Plaintiff Ford's layoff.

### III.   JURISDICTION, VENUE, AND EXHAUSTION

1.  Jurisdiction lies in this Court pursuant to 42 U.S.C. 5851 (b)(4) as

COMPLAINT-                              3                        Stephani Ayers
                                                                PO Box 1061
                                                                Medford, OR 97501

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiff filed his ERA complaint over one year ago, the Secretary has not issued a

written final decision, and there is no showing that such delay is due to the bad

faith of the Plaintiff.

2.    Venue lies in this United States District Court under 28 U.S.C. §

1991(b) and (c) by virtue of the fact that the Defendant is regularly engaged in

business in this judicial district, the Defendants have offices located herein, and the

conduct complained of herein occurred and/or resulted in injury to the Plaintiff in

this judicial district.

3.    Plaintiff has exhausted all administrative procedures required by law

on all of the claims for relief pleaded herein. On May 11, 2012, Plaintiff filed an

ERA retaliation complaint with OSHA as to the retaliatory actions against him that

form the basis of the actions alleged herein. On July 30, 2015, OSHA found in

Plaintiff's favor and ordered Defendant Bechtel to pay Plaintiff backpay,

compensatory damages, and attorneys fees.   On August 28, 2015, Defendant

Bechtel filed a request for hearing before the Office of Administrative Law Judges.

The parties went to hearing on March 15-17, 2016.  ALJ King held a

teleconference with the parties indicating he wished for more briefing on damages.

ALJ King left employment before issuing a written order.  The DOL assigned a

new judge and new hearing date pursuant to Defendants' request for a new trial

COMPLAINT-                    4

Stephani Ayers
PO Box 1061
Medford, OR 97501

based on ALJ King's departure.  Plaintiff filed his required 15-day advance notice of intent to remove May 1, 2018.

## IV.    GENERAL FACTS
### The Hanford Site

1.  The Hanford Nuclear Site ("Hanford"), is located in Washington State and is a former nuclear weapons production facility. Since 1990, the DOE has been dedicated to a clean-up mission to deal with the cold-war legacy of high-level pollution on site.  Hanford sits adjacent to the Columbia River and is home to 56 million gallons of hazardous high-level nuclear waste.

2.  For more than forty years, reactors located at Hanford produced plutonium for America's defense program. The process of making plutonium is extremely "inefficient" in that a massive amount of liquid and solid waste is generated while only a small amount of plutonium is produced. The DOE's mission is to ensure that all of the facilities and structures that were associated with Hanford's defense mission are deactivated, decommissioned, decontaminated, and demolished. Over 9,000 employees are currently employed at Hanford for that purpose.

3.  High-level nuclear waste, which is composed of chemical and radioactive

COMPLAINT-                          5                          Stephani Ayers
                                                              PO Box 1061
                                                              Medford, OR 97501

waste ("high-level nuclear tank waste"), is currently stored in 177 large underground tanks, all of which have exceeded their projected stable lifetime by at least twenty years and a third of which are confirmed to have leaked into the ground beneath the tanks. DOE estimates that approximately 1 million gallons of high-level nuclear tank waste have leaked into the ground at Hanford. The groundwater under more than 85 square miles of the Hanford site is contaminated above current regulatory standards.

### The Hanford Tank Waste Immobilization and Treatment Plant

4.  The cornerstone of the high-level nuclear tank waste cleanup project at Hanford is the Hanford Tank Waste Treatment and Immobilization Plant ("WTP"), also known as the "Vit Plant". The WTP will be an industrial complex of facilities for separating and vitrifying (immobilizing in glass) millions of gallons of high level nuclear tank waste. Vitrification technology involves blending the high-level nuclear tank waste with glass-forming materials and heating it to over 2,000 degrees Fahrenheit. The mixture is then poured into stainless steel canisters to cool and solidify. In this glass form, the high-level nuclear tank waste is considered stable and impervious to the environment, and its radioactivity will dissipate over hundreds or thousands of years.

5. The five major components of the WTP will be: the Pretreatment Facility for separating the high-level nuclear tank waste into the high level radioactive waste stream and the low level stream, the High-Level Waste and Low-Activity Waste facilities where the high-level nuclear tank waste will be immobilized into glass, the Analytical Laboratory for providing chemical analysis for plant operations and testing the quality of the glass, and the Balance of Facilities, which will comprise several support facilities such as compressed air and treated water.

6. BNI-procured materials enter the WTP project through the Material Handling Facility (MHF). The MHF receives and stores equipment and materials that are to be used and installed in the WTP.

7. The WTP is currently one of the largest nuclear projects in the United States and once complete, the WTP will be the largest facility of its kind in the world. The DOE has regulatory oversight over the WTP and the MHF.

8. The original Bechtel cost estimate for the WTP was approximately $5 billion and with a time estimate of seven years to complete it.

9. The current Bechtel cost estimate for constructing the WTP is over $16.8 billion and the time estimate to complete it is nearly twenty years. Both cost and schedule for the WTP have grown by over 240 percent.

COMPLAINT-                              7                              Stephani Ayers
                                                                      PO Box 1061
                                                                      Medford, OR 97501

10. Following the construction of the WTP and the commissioning of WTP facilities and systems, the plant is planned to be fully operational by 2036 as mandated by the Tri-Party Agreement.

11. The WTP is being built with a design life of forty years. There are parts of the WTP that must operate for forty years with no maintenance including, for example, tanks, pipelines, mixers in tanks, level control instrumentation, steam spargers, and air system control devices.

12. The high-level nuclear tank waste in the Hanford waste tanks includes plutonium and enriched uranium. A criticality accident occurs when a nuclear chain reaction is accidentally allowed to occur in fissile material such as plutonium and enriched uranium. This chain reaction releases radiation, which is highly dangerous to personnel and could result in contamination of the surrounding facilities and structures. When such incidents occur outside reactor cores and test facilities where fission is intended to occur, they pose a high risk both of injury or death to workers.

13. A criticality incident of sufficient magnitude could also damage the facility and endanger the public.

COMPLAINT-                          8                          Stephani Ayers
                                                              PO Box 1061
                                                              Medford, OR 97501

14. While the actual probability of a criticality may be low, the consequences of a criticality would be significant. Consequences include notification and reviews by state, federal, and international agencies, which could result in a shutdown for an indeterminate period.

15. The hazardous high-level nuclear tank waste in the Hanford waste tanks contains materials that constantly generate explosive hydrogen gas. The hydrogen gas can become trapped and accumulate in the waste.

16. A combined criticality with explosive gas release at the WTP could be an accident of the worst magnitude and could cause injury and death to workers as well as endangering the public and the environment.

### Plaintiff's Duties and Supervision

17.  Plaintiff Walter Ford is a Millwright who worked at the Hanford Site for various contractors at Hanford since 1985, including Westinghouse and Fluor Hanford, until his removal by Bechtel and URS in 2011.  In October 2007, Plaintiff was dispatched by the union as a Millwright for Defendants at the Waste Treatment Plant at Hanford.  As a Millwright for Defendants, Plaintiff worked in preventative maintenance on the equipment that ultimately would be used in the

COMPLAINT-                                      9                           Stephani Ayers
                                                                           PO Box 1061
                                                                           Medford, OR 97501

WTP for the treatment of high-level radioactive waste.  This equipment included cranes and cables that would eventually lift high level waste loads.

18. This preventative maintenance is required by the Department of Energy to ensure that when the equipment is in operation working with high-level nuclear waste, it will operate as intended.   Various DOE policies and procedures address required preventative maintenance at the WTP and MHF.

19.  In furtherance of the DOE's objective (and requirements) to insure material and equipment are stored and maintained in proper working order for when they are installed in processing high level radioactive waste, maintenance is performed in accordance with a set of work instructions called work packages. Depending on the task, a work package may be simple or complex but typically includes a list of materials, equipment, steps and checklists to be used in performing the maintenance work.

20. "Pencil-whipping" was a practice that Defendant management pressured employees to engage in with regards to the work packages.  Pencil-whipping involved employees simply checking off something as done in a work package checklist, when in fact the step, task, or work was not actually performed.

COMPLAINT-                                    10                     Stephani Ayers
                                                                    PO Box 1061
                                                                    Medford, OR 97501

21. From 2007-April 2008, Plaintiff was supervised by General Foreman Tom Silvers at the WTP.  After reporting a concern regarding one of Tom Silvers' subordinates who had injured a co-worker, Plaintiff was transferred to the MHF.

22.  From April 2008-Spring 2009, Plaintiff Ford was at the MHF supervised by Bechtel Craft Superintendent Darrel Bice.

23. In Spring 2009, the Bechtel supervisor in charge of the Material Handling Facility, Darrel Bice, was replaced by Defendant URS manager, Steve Bishop.

24. In May 2011, Plaintiff was removed from his foreman position and moved back to the Waste Treatment Plant, where he reported to Foreman Justin Rohrer who operated under URS supervisor John Gibson.

25.  In September 2011, Plaintiff was reassigned to the on-site construction crew where he worked under Foreman Mike Skeath and Supervisor Harold Maple.

26. John Gibson was one of a group of four supervisors who worked as a group at the WTP construction site. The other three supervisors were URS employees Steve Bishop, Mark Berkenbile, and Jason Cook.  Justin Rohrer, James Burks, Harold Maple, and Mike Skeath were all Bechtel National employees at the time of Mr. Ford's rating, ranking, and layoff. Mr. Rohrer provided input to the

COMPLAINT-                                    11                          Stephani Ayers
                                                                         PO Box 1061
                                                                         Medford, OR 97501

rankings that resulted in Mr. Ford's layoff and recommendations as to the discipline for Mr. Ford that resulted in lowering his scores.  Mr. Cook, Mr. Berkenbile, Mr. Gibson, and Mr. Bishop were involved in determining the final ratings and rankings of Mr. Ford and transmitting those to Mr. Burks for review.

### The History of WTP Hostile Work Environment Findings

27.  Defendants are contractors who have come under heavy criticism for establishing and maintaining a retaliatory work culture. In January 2005, a Department of Energy report documented the existence of a hostile working environment at the Waste Treatment Plant.  The investigation team interviewed 117 employees, and found "Greater than 50% of the workers interviewed believed their job would be in jeopardy due to their participation in this inquiry. Most of the interviewees mentioned other workers had issues but felt they could not risk their employment by coming forward ... Roughly 20% voiced the belief that when individuals raise safety concerns, those individuals are targeted for future lay-off lists.  Roughly 15% of the interviewees claimed there was fear of lay-offs for workers who reported issues to Labor Relations or with the Employee Concerns process."

COMPLAINT-                                    12                          Stephani Ayers
                                                                         PO Box 1061
                                                                         Medford, OR 97501

28. In September 2008, the DOE imposed a civil penalty for nuclear safety violations against Defendant Bechtel National, Inc. based upon the findings of a DOE hearing officer that a Bechtel engineer had been terminated after raising nuclear safety concerns.

29. In an October 2010 review, the DOE Office of Health, Safety and Security (HSS) examined the safety culture in the engineering division at the Waste Treatment Plant, noting "Chilled Work Environment. Some individuals within WTP believe that BNI management has created a "chilled" atmosphere that discourages individuals from reporting safety concerns. Further, some individuals expressed their belief that individuals who raise safety concerns could be subject to retaliation, including the threat of losing their jobs. One of the most significant concerns was subtle retaliation - i.e., that individuals who raise safety issues would not be selected for new assignments as their current assignments are completed. . . In this environment, a significant number of employees are understandably concerned that a reputation as a "trouble maker" could adversely impact their opportunities for continued or future employment. In addition, several interviewees, including senior staff and managers, indicated that the situation surrounding the individual who raised concerns to the DNFSB (prompting the

COMPLAINT-                          13                          Stephani Ayers
                                                               PO Box 1061
                                                               Medford, OR 97501

request by EM to perform this review) contributed to a chilling effect that may reduce their willingness to raise technical or safety issues. While some organizations had a higher fraction of personnel with concerns than others, the concerns about a chilled environment were not limited to a single organizational element or job category."

30. On June 9, 2011, the Defense Facilities Nuclear Safety Board (DNFSB) issued a letter to Energy Secretary Steven Chu, transmitting DNFSB Recommendation 2011·1 to the Secretary of Energy, Safety Culture at the Waste Treatment and Immobilization Plant. The Board wrote: "The Board finds that expressions of technical dissent affecting safety at WTP, especially those affecting schedule or budget, were discouraged, if not opposed or rejected without review. Project management subtly, consistently, and effectively communicated to employees that differing professional opinions counter to decisions reached by management were not welcome and would not be dealt with on their merits. There is a firm belief among WTP project personnel that persisting in a dissenting argument can lead, as in the case of Dr. Tamosaitis, to the employee being removed from the project or reassigned to other duties." As of the writing of this finding, Dr. Tamosaitis sits in a basement cubicle in Richland with no meaningful

COMPLAINT-                                    14                     Stephani Ayers
                                                                    PO Box 1061
                                                                    Medford, OR 97501

work. His isolated physical placement by contractor management and the lack of meaningful work is seen by many as a constant reminder of what management will do to an employee who raises issues that might impact budget or schedule."

31. On January 11, 2012, the DOE's Office of Health, Safety and Security released its HSS Report and Supplemental HSS Report. Some key findings from the report included:

• " ... during the safety culture evaluation, a significant number of staff within ORP, DOE-WTP, and BNI expressed reluctance to raise safety or quality concerns for various reasons. Fear of retaliation was identified in some BNI groups as inhibiting the identification of problems.

• "For example, 48 percent of the responding electricians disagreed or strongly disagreed with a statement on the K-MR survey stating "I am confident that the 'zero tolerance' policy against retaliation at WTP is enforced."

• "In this atmosphere, instances where individuals perceive that their concerns about design questions are not listened to, that management does not want to hear problems, that technical dissent is suppressed, and that blame is being assigned unfairly are almost inevitable (for both Engineering and E&NS staff members). The end result is that a significant number of staff either express a general reluctance to raise issues or indicate perceptions of retaliation; the situation is not consistent with a healthy safety culture."

• "ORP, DOE-WTP, and BNI management has not achieved timely resolution of important issues, including those discussed above; in some cases, issues have remained unresolved for about ten years."

• "Interviews with construction crafts personnel indicated a widespread perception that the performance rating system ... is arbitrary and unfairly implemented in a way that inhibits or penalizes the raising of safety and quality issues."

COMPLAINT-                                    15                          Stephani Ayers
                                                                         PO Box 1061
                                                                         Medford, OR 97501

• " ... many crafts workers identified concerns about safety culture, including mistrust of the construction superintendents; frustration with inconsistent disciplinary actions and the craft rating system; fear of retaliation for raising safety issues; inconsistent application and communication of rules and procedures among WTP buildings; and inadequate planning, scheduling, and coordination of work."

• "Overall, only 0% of all survey respondents feel that they can openly challenge decisions made by management."

32. Bechtel has contract and legal obligations prohibiting retaliation against whistleblowers at Hanford. URS had contract and legal obligations prohibiting retaliation against whistleblowers at Hanford.

## V. FACTS REGARDING PROTECTED ACTIVITIES

1. In 2004, Plaintiff Ford testified in a Department of Labor Energy Reorganization Act proceeding, *Cecil v. Fluor Hanford, Inc*. DOL OALJ Case No. 2004-ERA-00011 (Aug. 16, 2006). At issue in *Cecil* was a dispute regarding a crane that was lifting highly radioactive materials. Plaintiff Ford testified that he shared Complainant Cecil's concern that the brake system had to be replaced, load tested, and recertified, contrary to management's attempts to only try to repair the brakes that were in place. Plaintiff Ford also testified about hostile comments he heard regarding Mr. Cecil not being able to keep his mouth shut about safety. The

COMPLAINT-                                     16                          Stephani Ayers
                                                                          PO Box 1061
                                                                          Medford, OR 97501

Administrative Law Judge ruled in favor of Complainant Cecil in 2006. Knowledge of this complaint and Mr. Ford's involvement in it was spread widely through the Hanford Site.

2. In 2005, Plaintiff filed a retaliation complaint under the Energy Reorganization Act against Hanford employers Energy Northwest, Inc., and Battelle National Labs because of concerns he had that he was being blacklisted by Hanford area employers due to his Department of Labor testimony in 2004.

3. In October 2007, Plaintiff was dispatched by the union as a millwright for Defendants at the Waste Treatment Plant at Hanford. In April 2008, Plaintiff Ford reported to BNI management safety concerns he had regarding lapses in following company and DOE mandated safety rules, policies and procedures at the workplace, including a millwright purposely trying to eject a fellow employee from a golf cart which caused her injury; and another occasion of horseplay by the same millwright causing a large brass hook to fall from 30 feet above to the feet of an employee below. Plaintiff also reported that he had received reports a manager expressing his desire to not work with Plaintiff because he was a "whistleblower". Plaintiff's report resulted in a company investigation. After his reports, Plaintiff was then transferred to the Material Handling Facility (MHF).

COMPLAINT-                                    17                         Stephani Ayers
                                                                        PO Box 1061
                                                                        Medford, OR 97501

4.  In April 2008, Plaintiff Ford reported possible blacklisting by nuclear fuel company AREVA (now Orano USA) to the U.S. Department of Labor. AREVA provided various services related to nuclear energy, including cleanup and closure.

5. In 2009, Plaintiff started a Safety Council for the Materials Handling Facility, where employees could seek resolution to various safety concerns and where Plaintiff and members could seek to improve the MHF safety culture. Plaintiff wrote the MHF Safety Council Standard Implementation Procedures.  As of May 2009, Plaintiff had been elected Chair of the MHF Safety Council.

6.  Through 2010-2011, Plaintiff raised and pursued several issues both on his own behalf on and on behalf of other employees involving Defendants' operations. He raised concerns both through and outside the MHF Safety Council. Not all of Mr. Ford's concerns were recorded in the MHF Safety Council Meeting Minutes, but a number of important concerns he raised or participated in in 2010-2011, including resolution of a radiological alarm and concerns over flashback in weed burners, were recorded in said Minutes and circulated throughout the worksite.  He also reported: crane maintenance safety issues related to rust, lifting cables and required maintenance, optical tooling safety issues, specific ecosystem plume alarms while working at MHF, safety issues related to confusing language

COMPLAINT-                         18                    Stephani Ayers
                                                        PO Box 1061
                                                        Medford, OR 97501

code used over radio system to alert work force to potential hazards and dangers at Hanford, and storage equipment safety issues.

7.  In January 2010, Plaintiff Ford complained to the Nuclear Regulatory Commission about concerns he had about ongoing blacklisting at the Columbia Generating Station.

8. In January 2011, Plaintiff Ford questioned the procedure regarding back flow arrestors in the "weed burners" propane tank and ultimately along with the Safety Council suggested to err on the side of safety and install flashback arrestors on heat shrink guns and portable propane heaters.

9.  At various times throughout 2011, Plaintiff objected to Bishop's pressure to pencil whip packages, and informed Bishop that he would not skip the steps mandated by the work packages.  Plaintiff similarly objected to Foreman Rohrer about skipping work package steps and not properly cleaning equipment. Plaintiff's reputation around the work site was that he would not skip work package steps like other employees.

## VI.  FACTS REGARDING ADVERSE ACTIONS

1.  At various times during his employment, Bechtel and URS managers and employees warned others about working with Plaintiff Ford, warned others about letting Plaintiff Ford see them work, or expressed a desire to not work with

COMPLAINT-                                    19

him because he was a "whistleblower" or "caused trouble" for others. He was called a "pot stirrer" to his colleagues. His reputation as a whistleblower was widely circulated throughout the WTP and MHF work sites.

2.  Throughout his time at MHF, Defendant URS manager, Steve Bishop's demeanor and attitude towards Plaintiff grew increasingly hostile.  At various points, Mr. Bishop brought in work crews to do work packages when Plaintiff refused to skip steps mandated within them.

3.  In May 2011, Plaintiff was removed from his foreman position and moved back to the Waste Treatment Plant, where he reported to Foreman Justin Rohrer and was retaliatorily singled out for repeated discipline.

4.  Defendants ultimately retaliated against Plaintiff by terminating him in a layoff on November 17, 2011.

## VI. CAUSES OF ACTION

1. Defendants' managers knew of Plaintiff's ERA-protected activities including testifying in actions before the Department of Labor, bringing complaints to the DOL and NRC on his own behalf, and raising and escalating nuclear safety related concerns to management in 2008-2011, within and outside of the MHF Safety Council.

COMPLAINT-                                          20                          Stephani Ayers
                                                                                PO Box 1061
                                                                                Medford, OR 97501

2. Defendants have engaged in the above hostile work environment, and the indicated pattern of reprisal and discrimination against employees who raise concerns generally, and Plaintiff specifically. They took discrete acts against Plaintiff in whole or in part due to his protected activity.

3. Plaintiff's termination on November 17, 2011, was in reprisal for Plaintiff's protected activities and in violation of the Energy Reorganization Act.

## VI. REQUEST FOR RELIEF

1. Plaintiff respectfully requests the following relief:

a.  affirmative action in the way of declaratory relief be afforded Plaintiff directing the institution of safety-committed work environment, free from retaliatory animus;

b. an Order reinstating Plaintiff to his former position as Millwright;

c. back pay for lost wages and overtime as a direct result of the Defendant's retaliatory actions, with interest;

d. restoration of any and all benefits that would have accrued to Plaintiff but for Defendant's retaliatory actions, including but not limited to any health care benefits, reinstatement of pension benefits and 401K retirement benefits;

e. an award of damages to compensate Plaintiff for emotional distress and the infliction of pain and suffering, in an amount to be determined by a jury but not less than $500,000;

f. an exemplary award of damages;

COMPLAINT-                              21                    Stephani Ayers
                                                             PO Box 1061
                                                             Medford, OR 97501

g. prominent posting of the order granting relief to Plaintiff throughout the plant, with instructions to all Hanford employers to distribute the order to all personnel;

h. upon reinstatement, affirmative actions to abate the hostile working environment, including an Order to enjoin unlawful employment actions and to provide triple damages against Defendant for engaging in discrimination or committing acts of reprisal against employees who engage in protected activity;

i. all costs for bringing this action, including attorney fees and litigation costs;

j. any and all such other relief in law or in equity to which Plaintiff may be entitled.

Respectfully SUBMITTED this 15th day of June, 2018:


  s/Stephani L. Ayers
Stephani L. Ayers (Washington State Bar #31610)
Law Office of S.L. Ayers
P.O. Box 1061
Medford, Oregon 97501
Tel: (813) 382-7865
Fax: 1 (888) 866-4720
Email: stephani@whistleblowerdefenders.com

Nikolas F. Peterson, Esq.
Hanford Challenge
2719 East Madison Street, Suite 304
Seattle, WA 98112
Tel: (206) 292-2850 ext. 25
Email: nikolasp@hanfordchallenge.org

Attorneys for Plaintiff

COMPLAINT-                              22                          Stephani Ayers
                                                                   PO Box 1061
                                                                   Medford, OR 97501